UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

STEPHANY CARVAJAL, individually
and on behalf of all others similarly situated,

    Plaintiff,

v.

IMPERIAL FIRE AND CASUALTY
INSURANCE COMPANY, a Louisiana
corporation,

    Defendant.
_____/

Case No.

**CLASS ACTION**

**JURY TRIAL DEMAND**

# CLASS ACTION COMPLAINT

Plaintiff Stephany Carvajal ("Plaintiff"), on behalf of herself and all others similarly situated, files this Class Action Complaint against Defendant Imperial Fire and Casualty Insurance Company ("Imperial" or "Defendant"), and, in support thereof, alleges the following:

## NATURE OF THE ACTION

1. This is a class action lawsuit by Plaintiff, the named insured under an automobile policy issued by Defendant Imperial for private passenger auto physical damage coverage (the "Insurance Policy"),[1] including collision or physical damage other than collision, that required payment of "Actual Cash Value" or "ACV" in the case of a total loss of the insured vehicle.

2. Defendant is a large private insurance company that, upon information and belief, collects tens of millions of dollars in private-passenger automobile physical damage coverage premiums every year from its insureds. Among other coverages, Defendant offers collision or other than collision coverage. Upon information and belief, Defendant systematically underpaid Plaintiff

---

[1] A true and copy of Plaintiff's Insurance Policy is attached hereto as Exhibit A.

and tens of thousands of other putative class members amounts Defendant owed its insureds in ACV payments for total loss vehicles insured with physical damage coverage.

3. This lawsuit is brought by Plaintiff individually and on behalf of all other similarly situated insureds who suffered damages due to Defendant's failures to make full ACV payments (or full total loss payment) to first-party total-loss insureds with physical damage coverage, including collision or other than collision coverage. Specifically, as a matter of uniform practice and procedure, Defendant fails to include sales tax and vehicle title transfer and vehicle registration fees ("Vehicle Title and Registration Fees") in its calculation of ACV when making full total loss payments to its insureds.

4. Defendant's failures to make full total loss payment on first-party total loss claims owed to its insureds are breaches of the Insurance Policy and clear breaches of contract.

## PARTIES, JURISDICTION, AND VENUE

5. At all times material hereto, Plaintiff is and was domiciled in Miami, Florida and is a citizen of the State of Florida.

6. At all times material hereto, Defendant is and was authorized to transact insurance business in the State of Florida, with its principal place of business in Louisiana. Imperial is incorporated in the State of Louisiana.

7. This Court has personal jurisdiction over Defendant because Defendant conducts business in Miami-Dade County, Florida and maintains offices in the State of Florida.

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because (a) the Plaintiff is a member of the putative class, which consists of at least 100 members, many of which are citizens of different states than that of the Defendant; (b) the amount-in-

controversy exceeds $5 million, exclusive of interest and costs; and (c) none of the exceptions contained in 28 U.S.C. § 1332(d) apply to this action.

9. Venue is proper in this Court because a substantial portion of the acts and course of conduct giving rise to the claims alleged occurred within this district and the Defendant is subject to personal jurisdiction in this District.

**FACTUAL ALLEGATIONS**

10. The Insurance Policy includes Defendant's standardized language as to physical damage coverage, including collision or other than collision coverage, including payment of the ACV of an insured vehicle in the event of a total loss.

11. Under the Insurance Policy, ACV includes an obligation to pay sales tax and Vehicle Title and Registration Fees for total loss vehicles insured under physical damage collision or other than collision coverage.

12. As typified by Plaintiff's experience, Defendant often does not pay sales tax or Vehicle Title and Registration Fees when determining and paying the ACV of total-loss vehicles to its insureds, contrary to its obligations under the Insurance Policy to pay its insureds the full amount of the ACV of an insured's vehicle.

13. At all times material hereto, Plaintiff's vehicle, a 2017 Audi A4 with Vin Number WAUGMAF43HN033122 (the "Insured Vehicle"), was insured by Defendant and covered under the Insurance Policy.

14. On or about May 28, 2019, Plaintiff was involved in an accident while operating the Insured Vehicle. As a result, Plaintiff filed a claim for property damage with Defendant, Claim No. 3342096 (the "Claim").

15. After Plaintiff filed her Claim, Defendant determined that the Insured Vehicle was

3

a total loss with a base market value of $26,148.00. In turn, Defendant deducted $349.20 for towing and/or storage overages, and then subtracted Plaintiff's $1,000.00 deductible, for a total net payment amount of $24,798.80. *See* Settlement Letter, attached hereto as Exhibit B.

16. To determine the net payment amount for the Insured Vehicle, Imperial utilized an independent vehicle valuation company, Kelley Blue Book Co., Inc. ("Kelley Blue Book"), which created a Used Vehicle Report (the "Vehicle Report") to estimate the base market value of the Insured Vehicle by comparing similar vehicles valuations and the costs to purchase similar vehicles with similar conditions and mileage. *See* Vehicle Report, attached hereto as Exhibit C.

17. There are no amounts for sales tax or Vehicle Title and Registration Fees listed in the Vehicle Report. *See* Ex. C.

18. Defendant breached its Insurance Policy with Plaintiff by failing to pay any amount for sales tax or Vehicle Title and Registration Fees when it paid Plaintiff the purported Actual Cash Value associated with the total loss of the Insured Vehicle.

19. By not including amounts for sales tax or Vehicle Title and Registration Fees in its calculation of ACV paid to Plaintiff or similarly situated insureds, Defendant improperly limits the amount paid to Plaintiff and all of its insureds with a Florida insurance policy.

## IMPERIAL'S INSURANCE POLICY

20. Under the Insurance Policy, Imperial defines Actual Cash Value as:

> [T]he fair market value of the stolen or damaged property at the time of the accident or loss. Fair market value takes into account the following factors which may reduce value:
> a. The property's age, mileage and physical condition; and
> b. Depreciation and prior damage.

Ex. A at 2, "Policy Definitions."

21. Thus, the subject policy language does not further define ACV to include: (1) any

4

provision excluding sales tax from ACV; (2) any provision excluding Vehicle Title and Registration Fees from ACV; and (3) any provision deferring payment of sales tax or Vehicle Title and Registration Fees for any purpose whatsoever.

22. Under Section IV of Plaintiff's Insurance Policy, entitled "DAMAGE TO YOUR AUTO COVERAGE," which is representative of the policy language governing the thousands of insureds in the putative Class, Defendant states, under the "Limits of Liability" section:

> The most we will pay, and our limit of liability, for a loss covered under this Part IV is the lesser of:
>
> a. The actual cash value of the stolen or damaged property;
> b. The amount necessary to repair physical damage to the property;
> c. The amount necessary to replace the stolen or damaged property with other property of like kind and quality.

Ex. A. at 25.

23. The Insurance Policy's language applies to all covered automobiles, irrespective of ownership interests—whether the insured vehicles are owned, financed, or leased. Ex. A at 3.

24. Every form Insurance Policy applicable to Plaintiff and the Class Members contains materially identical language concerning ACV payments owed to insureds.

25. Plaintiff and all members of the putative class satisfied all conditions precedent, or such conditions precedent were waived or excused.

**PAYMENT OF MANDATORY FEES**

26. Controlling case law from the Florida Supreme Court, Florida's appellate courts, the Eleventh Circuit Court of Appeals, and Florida's federal district courts hold that the term "actual cash value," when undefined in an Insurance Policy, should be defined as the repair or replacement cost minus depreciation—a definition that would include the sales tax necessarily incurred upon replacement of the insured vehicle. *See e.g.*, *Trinidad v. Fla. Peninsula Ins. Co.*, 121

5

So. 3d 433, 438 (Fla. 2013) (holding that "[a]ctual cash value is generally defined as 'fair market value' or '[r]eplacement cost minus normal depreciation,' where depreciation is defined as a 'decline in an asset's value because of use, wear, obsolescence, or age.'") (quoting Black's Law Dictionary 506, 1690) (9th Ed. 2009); *Goff v. State Farm Fla. Ins. Co.*, 999 So. 2d 684, 689 (Fla. 2d DCA 2008) (noting that undefined ACV is calculated as full replacement cost minus depreciation); *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1306 (11th Cir. 2008) (holding that sales tax "should be included in an ACV payment if it is 'reasonably likely' that the insured would incur" such cost upon replacement); *Roth v. Geico Gen. Ins. Co.*, No. 16-cv-62942 (S.D. Fla. June 14, 2018), D.E. 247 at 9 ("[T]he court concludes that [sales tax and title transfer fees] are components of actual cash value under the Policy and are therefore due to be paid to the insured under the Policy, regardless of whether the vehicle is owned, financed, or leased.") (footnote omitted); *Bastian v. United Services Auto. Ass'n*, 150 F. Supp. 3d 1284, 1290 (M.D. Fla. 2015) (agreeing with the Eleventh Circuit's "easily reached conclusion [in Mills] that state and local taxes are part of the cost of replacing an item" and thus should be included in the calculation of the ACV).

27. In interpreting insurance policies, Florida courts begin with the plain language of the policy as bargained for by the parties. *See Altman Contractors, Inc. v. Crum & Forster Specialty Ins. Co.*, 832 F.3d 1318, 1322 (11th Cir. 2016). Policy terms are given their plain and ordinary meaning and should be read in light of the skill and experience of ordinary people. *Id.* But, "if the relevant policy language is susceptible to more than one interpretation, one providing coverage and another limiting coverage, the Insurance Policy is considered ambiguous." *See Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000). Courts should interpret policy ambiguities "liberally in favor of the insurer and strictly against the insured who prepared the policy." *See Prudential Prop. & Cas. Ins. Co. v. Swindal*, 622 So. 2d 467, 470 (Fla. 1993).

6

Moreover, Florida law is equally well-settled that coverage clauses are "construed in the broadest possible manner" in order to effect "the greatest extent of coverage." *See e.g.*, *Hudson v. Prudential Prop. & Cas. Ins. Co.*, 450 So. 2d 565 (Fla. 2nd DCA 1984) (noting that coverage must be construed broadly and exclusions narrowly).

28. Sales tax and is an element of the full total loss payment owed to insureds in the event of a total loss.

29. By operation of law and in the view of a reasonable insured, Defendant's policy promises to provide costs to be incurred upon replacement of the vehicle. Otherwise, Defendant's insureds, including Plaintiff, are not paid the amount sufficient to purchase a replacement vehicle.

30. Nevertheless, Defendant declined to include any and all sales tax in making ACV payments to total loss insureds, thereby breaching its respective contracts with its insureds.

## **CLASS ALLEGATIONS**

31. Plaintiff brings this class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of herself and the following class (the "Class") of similarly situated persons:

> All insureds with a Florida policy issued by Imperial Fire and Casualty Insurance Company for a vehicle with private-passenger physical damage coverage for comprehensive or collision loss, who made a first-party claim that was adjusted as a total loss and who received an actual cash value payment from Imperial that did not include amounts for sales tax and Vehicle Title and Registration Fees, within applicable statutes of limitations prior to the date on which this lawsuit was filed until the date of any certification order.

32. Excluded from the Class is Defendant, including any parent, subsidiary, affiliate, or controlled person of Defendant; Defendant's officers, directors, agents, or employees; and the judicial officers assigned to this litigation, and any members of their staffs and immediate families.

33. Plaintiff reserves the right to modify or amend the definition of the proposed Class and/or to add subclasses, if necessary, before this Court determines whether certification is appropriate.

### A. **Numerosity**

34. Although the precise number of Class members is unknown to Plaintiff at this time and can only be determined through appropriate discovery, Plaintiff believes that, because Defendant is a large, national insurer and writes hundreds of millions of dollars of private-passenger physical damage coverage premiums per year, the Class affected by Defendant's unlawful practice consists of thousands of individuals, or that the Class of persons affected is otherwise so numerous that joinder of all Class members is impractical. The unlawful practice alleged herein is a standardized and uniform practice employed by Defendant pursuant to standardized insurance policy language, and results in the retention by Defendant of insurance benefits properly owed to Plaintiff and the Class members. The Class definition will permit the Court to reasonably ascertain whether any individual or entity is a member of the Class, as any individual who was an insured of Defendant during the class period and received an ACV payment that did not include Vehicle Title and Registration Fees will be a member of the Class.

35. Upon information and belief, Defendant uniformly fails to pay Vehicle Title and Registration Fees in connection with first-party total loss claims. Accordingly, the Class consists of thousands of Defendant's insureds who were not paid in breach of their respective insurance policies issued by Imperial. Thus, pursuant to Federal Rule of Civil Procedure 23(a)(1), the large size of the Class renders the Class so numerous that joinder of all individual members is impracticable.

### B. **Commonality**

36. Common questions of law and fact predominate in this matter because Defendant's conduct towards the members of the Class is identical. Defendant uniformly fails to pay Vehicle Title and Registration Fees in total loss cases.

37.     Plaintiff shares a common interest with all members of the putative Class in the objects of the action and the relief sought.

38.     Plaintiff satisfies Fed. R. Civ. P. 23(a)(2)'s commonality requirement because her claims arises from a practice which Defendant applies uniformly to all its similarly situated class members and are based on the same legal theories as all other members of the putative class, that failing to pay Vehicle Title and Registration Fees in total loss cases violates the uniform insurance policies. Because Defendant's conduct was uniform as to all class members, the material elements of Plaintiff's claims and those of absent class members are subject to common proof, and the outcome of Plaintiff's individual actions will be dispositive for the Class. The common questions include, but are not limited to, the following: (a) whether, under the Defendant's standardized policy language, Plaintiff and the class members are owed Vehicle Title and Registration Fees as part of ACV upon the total loss of an insured vehicle; and (b) whether the Defendant has breached its insurance contracts with the Plaintiff and the class members by failing to pay Vehicle Title and Registration Fees as part of ACV upon the total loss of an insured vehicle.

**C.     Typicality**

39.     Pursuant to Federal Rule of Civil Procedure 23(a)(3), Plaintiff's claims are typical of the claims of all other members of the Class because all such claims arise from the Defendant's failure to pay Vehicle Title and Registration Fees on first-party total loss claims for its insured vehicles.

40.     Plaintiff and the Class members' legal claims arise from the same core practices, namely, the failure to pay full ACV, which includes Vehicle Title and Registration Fees, for first-party total loss claims. The material facts underlying the claims of each putative Class member are

the same material facts as those supporting Plaintiff's claims alleged herein and require proof of the same material facts.

### D. Adequacy

41. Plaintiff can and will adequately represent the putative Class and her interests are common to, and coincident with, those of all absent Class members. By proving her individual claims, Plaintiff will necessarily prove the claims of the putative class and prove Defendant's liability to the Class. Plaintiff has no known conflicts of interest with any members of the Class; her interests and claims are not antagonistic to those of any other class members; nor are her claims subject to any unique defenses.

42. As a representative of the Class, Plaintiff therefore can and will fairly and adequately protect and represent the interests of the Class under the criteria set forth in Federal Rule of Civil Procedure 23(a)(4).

43. Plaintiff's counsel—Edelsberg Law P.A.; Shamis & Gentile, P.A.; and Normand PLLC—have extensive experience in complex commercial litigation, class actions, and have adequate financial resources to ensure that the interests of the Class will not be harmed.

44. If appointed Class representative, Plaintiff is aware of her fiduciary duties to absent Class members and is committed to faithfully uphold those duties. Plaintiff and her counsel are committed to the vigorous prosecution of this action and will allocate the appropriate time and resources to ensure that the Class is fairly represented.

45. Plaintiff and her counsel will therefore fairly and adequately assert and protect the interests of the Class.

### E. Predominance and Superiority

46. A class action provides a fair and efficient method for the adjudication of this controversy under the criteria set forth in Federal Rule of Civil Procedure 23(b)(3). Class treatment is a superior form of adjudication than the prosecution of individual claims and provides a substantial benefit to the court and litigants by avoiding a multiplicity of suits, and the risk of inconsistent results.

47. Because Defendant's conduct was uniform with respect to all prospective Class members, common questions of law and fact predominate over individual questions.

48. Because the Class encompasses many thousands of claims (if not tens of thousands of claims), a single, nationwide class action is plainly more efficient than many thousands of individual lawsuits, each requiring the same discovery and proofs. Given the relatively small amount of the claim(s) of each putative Class member, it is likely that, absent Class representation, such claims would not be brought, and the Class would never have appropriate redress for Defendant's improper conduct. A class action is superior to and more efficient than other available methods for the fair and efficient adjudication of this controversy.

49. Class treatment ensures uniformity and consistency in results, enables the many small claims of class members as well as claims for class-wide declaratory relief to be brought efficiently, and will provide optimum relief to Class members for their past and future injuries, as well as deter Defendant and other similar businesses from engaging in such wrongful conduct in the future.

50. In addition, the expense and burden of individual litigation effectively makes it a practical impossibility for individual Class members to seek redress for the wrongs alleged herein.

51. The advantages of maintaining this action as a class suit far outweigh the expense and waste of judicial effort that would result from thousands of separate adjudications or the

unfairness of none at all, which is the likely outcome if the small individual claims at issue are not aggregated as a class.

52. There are also no unusual difficulties likely to be encountered in the maintenance of this action as a class suit, and this Court can effectively manage the class action.

53. Any argument that class treatment is not viable or productive in the present action is undercut by the fact that the United States District Court for the Middle District of Florida recently treated as a class action a case that is substantially identical in fact and in law to the present action. *See Bastian v. United Servs. Auto. Ass'n*, 150 F. Supp. 3d 1284 (M.D. Fla. 2015). The parties in *Bastian* successfully reached a settlement on a class wide basis and stands as incontrovertible evidence demonstrating the efficacy and viability of class treatment in the present action. Similarly, in *Roth v. Geico General Insurance Company*, No. 16-cv-62942-WPD, (S.D. Fla. June 14, 2018), the court recently certified a class of insureds and entered judgment in favor of the class.

54. The Class is not so large that it would be unmanageable, and no difficulties are foreseen providing notice to individual claimants because Defendant keeps records of insurance policies and claims of prospective class members during the class period, including records of total loss vehicles. Therefore, both the membership of the class and the amount of individual damages is readily ascertainable from Defendant's records.

## COUNT I
### BREACH OF CONTRACT

55. The allegations contained in the foregoing paragraphs are incorporated by reference.

56. This count is brought by Plaintiff, on behalf of herself and the putative Class.

57. Plaintiff is party to the Insurance Policy, a contract with Defendant as described herein. *See* Ex. A. All Class members were parties to a similar insurance contract with Defendant containing materially identical terms.

58. Plaintiff and all Class members made a property damage claim that was determined by Defendant to be a covered claim and a first-party total loss under its insurance policy.

59. By paying the total loss claim, Defendant determined that Plaintiff and each Class member complied with the terms of their respective insurance contracts and fulfilled all of their duties and conditions under the policies for each insured to be paid on her or his first-party total loss claim.

60. Under the terms of Defendant's Insurance Policy, upon the total loss of an insured vehicle, Plaintiff and every Class member were owed the actual cash value of insured vehicle, including the unconditional payment sales tax and Vehicle Title and Registration Fees.

61. Defendant refused to make a FTLP and thus failed to pay the vehicle's ACV.

62. Defendant's failure to provide the promised coverage constitutes a material breach of contract with Plaintiff and every Class member.

63. As a result of said breaches, Plaintiff and the Class members are entitled to the full ACV payment, including sales tax and Vehicle Title and Registration Fees, as well as pre-judgment and post-judgment interest and other relief as is appropriate.

## RELIEF REQUESTED

WHEREFORE, Plaintiff, individually and on behalf of the putative Class, demands a trial by jury on all triable issues and seeks relief and judgment as follows:

1. For an Order certifying this action as a Class Action on behalf of the Class described above;
2. For an award of compensatory damages for Plaintiff and the Class in amounts owed under the Policies;

3. For all other damages according to proof;
4. For an award of attorney's fees and expenses as appropriate under applicable law;
5. For costs of suit incurred herein;
6. For pre-judgment and post-judgment interest on any amounts awarded; and
7. For other and further forms of relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable.

Dated: July 3, 2019         Respectfully submitted,

By:   */s/ Andrew J. Shamis*
**SHAMIS & GENTILE, P.A.**
Andrew J. Shamis, Esq.
Florida Bar No. 101754
ashamis@shamisgentile.com
14 NE 1st Avenue, Suite 400
Miami, FL 33132
Telephone: (305) 479-2299

**EDELSBERG LAW, P.A.**
Scott Edelsberg, Esq.
Florida Bar No. 0100537
scott@edelsberglaw.com
Jordan D. Utanski, Esq.
Florida Bar No. 119432
utanski@edelsberglaw.com
2875 NE 191st Street, Suite 703
Aventura, FL 33180
Telephone: (305) 975-3320

**NORMAND PLLC**
Edmund A. Normand, Esq.
Florida Bar No. 865590
ed@ednormand.com
Jacob Phillips, Esq.
Florida Bar No. 120130
jacob@ednormand.com
62 West Colonial Street, Suite 209
Orlando, Florida 32814
Telephone: (407) 603-6031

*Counsel for Plaintiff*